Paul Kelly, J.
The defendants herein singularly and together are charged with various acts of book-making, policy, and conspiracy to commit violations of the Penal Law in this regard. They have each moved for orders suppressing any evidence which law enforcement officials may have obtained as a result of “ wiretaps ” obtained pursuant to section 813-a of the Code of Criminal Procedure and in violation of the Constitutions of the State of New York and of the United States. In addition, they have each made, as part of their omnibus motions, requests for other relief which applications this court will deal with by separate order. The interests of justice require, however, that the court, in a single decision and order, deal with the u wiretaps ” in question.
The court has examined its records as well as those of its colleagues in an attempt to fully state the facts herein. For the sake of brevity and ease of understanding, the court will chronologically refer to the wiretap orders issued herein, starting with the one earliest in date and moving forward to the most recent:
On May 28, 1965, my colleague, the Hon. Albert A. Offedo, granted an application for a wiretap order on the telephones *748 numbered CE 9-9919 and FR 1-1688. It should be noted that the probable cause set forth in the supporting affidavits includes facts and acts observed personally by police officers. There is no recitation therein of any conversations overheard pursuant to a previously granted ‘ ‘ wiretap ’ ’ order.
On July 22,1965, a wiretap order was signed by the late Hon. Martin M. Kolbrener permitting the interception of conversations transmitted over telephone number FR 1-4608. The facts set forth in the supporting affidavits indicate that they were obtained, at least partially as a result of the ability of law enforcement officials to overhear conversations transmitted over telephone numbers FR 1-1688 and CE 9-9919. These conversations were intercepted pursuant to the May 28, 1965, wiretap order of Hon. Albert A. Oppido, herein above mentioned.
On September 15, 1965, a wiretap order was signed by the Hon. Douglas F. Young for the interception of conversations transmitted over telephone number 431-3147. The facts set forth in the supporting affidavit indicate that they were obtained, at least partially, as a result of the ability of law enforcement officials to overhear conversations transmitted over telephone number FR 1-4608. These conversations were intercepted pursuant to the July 22, 1965, wiretap order of the Hon. Martin M. Kolbrener herein above mentioned.
On September 21, 1965, a wiretap order was signed by the late Hon. Martin M. Kolbrener for the interception of conversations transmitted over telephone number FR 1-4608. In effect, this was a renewal of the prior order granted by Judge Kolbrener on July 22, 1965. A separate affidavit was submitted in support of this application.
On September 27, 1965, a wiretap order was signed by the Hon. Douglas F. Young permitting the interception of conversations transmitted over telephone number LI 1-6583. The facts set forth in the supporting affidavits are to some extent based upon information obtained as a result of conversations transmitted over telephone number FR 1-4608 and LI 1-6583 overheard pursuant to court order issued July 22,1965, by Judge Kolbrener (see above).
On November 5, 1965, a wiretap order was signed by Judge Martin M. Kolbrener for telephone numbers FR 1-4616, FR 1-4217, CE 9-5661, 239-9733, 239-9819, 239-9383 and 239-9392. The facts set forth in the supporting affidavits were to some extent obtained as a result of conversations transmitted over previously “tapped” telephones pursuant to court orders dated July 22, 1965, and renewed September 21, 1965, and a court order dated September 15, 1965 and to some extent by sources *749 independent of said prior wiretap orders. These facts came from reliable confidential informers and personal observation and verification by the police officer involved.
On January 28, 1966, this court, authorized the wiretapping of telephone number 212-421-8122. The facts set forth in the supporting affidavits are in part based upon information received pursuant to wiretap orders issued by Judges of this court on—
May 28, 1965, J. Oppido — FB 1-1688
July 22, 1965, J. Kolbrener — FB 1-4608
September 21, 1965, J. Kolbrener — FB 1-4608 (renewal)
September 15, 1965, J. Young — 431-3147
September 27, 1965, J. Young — LI 1-6583
November 5,1965, J. Kolbrener — FB 1-4616 and other numbers and in part based upon independent sources, arrests, police records and other areas of investigations.
On the same day, January 28, 1966, this court issued a wiretap order for the interception of communications transmitted over telephone numbers 371-4608 and 371-1138. As the basis of “ probable cause ” the affidavit sets forth information obtained in part from interceptions of telephone communications pursuant to previously granted wiretap orders signed by Judges of this court, to wit:
May 28, 1965, J. Oppido — FB 1-1688
July 22, 1965, J. Kolbrener — FB 1-4608
September 21,1965, J. Kolbrener — FB 1-4608 (renewal)
September 15, 1965, J. Young — 431-3147
September 27, 1965, J. Young — LI 1-6583
November 5, 1965, J. Kolbrener — FB 1-4616 and other numbers.
In addition other information was supplied to the court which appears to have been obtained independently from other sources, i.e., reliable confidential informants, police records, and other law enforcement agencies.
On February 8, 1966, the Hon. Martin M. Kolbrener issued a wiretap order authorizing the interception of communications over telephone numbers PY 1-7108, PY 1-7109, CE 9-9919, PY 1-4293 and FB 4-9443. The facts set forth therein are in part based upon information received as a result of intercepting telephone conversations pursuant to the wiretap order dated May 28, 1965, issued by Hon. Albert A. Oppido, and in part upon other independently obtained information, reliable confidential informants, and verification of the information so obtained, as well as records and sources within law enforcement agencies. On March 30, 1966, the Hon. Martin M. Kolbrener signed *750 another wiretap order regarding the same telephone numbers which were the subject of the February 8,1966, order. Part of the information was arrived at as a result of the interception pursuant to prior wiretap orders and part of the information was apparently independent of such sources.
On May 27, 1966, Judge Kqlbrener again renewed the wiretap order on the above-mentioned telephone number FR 4-9443. A separate affidavit in support of this application was submitted at that time.
On February 17, 1966, this court issued a wiretap order authorizing the interception of communications over telephone numbers 212-355-4472 and 212-355-4473. The facts set forth in the supporting affidavit are, in part, based upon the affidavits submitted in support of the previously granted wiretap order dated January 28, 1966, for the interception of conversations over telephone number 212-421-8122; as well as the information obtained as a result of that wiretap order. In addition, other information was provided for the court from the various law enforcement sources.
On March 28,1966, this court issued a wiretap order renewing the previously granted order of January 28, 1966, on telephone numbers 371-4608 and 371-1138. The supporting affidavits indicated facts obtained partially from previously granted wiretap orders and partially from other sources. The previously granted wiretap orders referred to in the affidavit have each been mentioned in the wiretap order granted January 28, 1966, and delineated hereinabove.
In addition, there was information obtained resulting from the wiretap order of this court dated February 17, 1966. The District Attorney, in support of this application, also produced additional independently obtained facts for the perusal of this court.
On April 14, 1966, this court issued a wiretap order for the interception of telephone communications over telephone numbers 212-563-0437 and 212-563-7791. A portion of the facts submitted in support of this application were obtained as a result of wiretap orders previously granted by the Judges -of this court, hereinbefore detailed in this chronology, the most recent being those issued on March 28, 1966, and February 17, 1966. In addition, there was other independent information supplied to this court in support of the application. In addition, this court made independent inquiry of witnesses in support of this request for a wiretap order, as it did in several of the prior orders granted by me in this case.
*751 On April 15, 1966, I renewed my previously granted wiretap order on telephone numbers 212-355-4472 and 212-355-4473. This, too, was based partially on wiretap information and also on other sources of information.
On May 11,1966,1 issued a wiretap order for the interception of conversations transmitted over telephone numbers 212-988-4313 and 212-988-4332. The information supplied to the court in support of this application was, in part, obtained as a result of previously ordered telephonic interceptions, in particular the wiretap orders issued by me dated February 17,1966; April 15, 1966; March 28, 1966; April 14, 1966, all of which have been heretofore detailed. There were, in addition, other facts submitted for the court’s consideration including independent observations by law enforcement officials, police records and personal inquiry by the court of sworn witnesses who testified before the court.
In considering all of the foregoing, this court is impressed with the thoroughness of the investigation pursued in this matter by the Nassau County District Attorney, his staff, the Nassau County Police Department and other law enforcement agencies who co-operated herein. However, the court finds itself as the “arbiter” of the question of whether or not an individual’s rights have been transgressed upon. In addition, to the question of whether each of the foregoing wiretap orders is in and of itself properly supported by affidavits which present ‘ ‘ sufficient facts to permit a finding of probable cause to believe that evidence of a crime might be thus obtained,” this court must also consider whether or not it will permit the defendants herein to attack each of the wiretap orders on the basis that the facts submitted in support of each one were themselves obtained by an alleged defective predicate wiretap order (People v. Fino, 27 A D 2d 689).
As was ,so clearly stated by my colleague, the Hon. Albert A. Oppido, in People v. McDonough (51 MisC 2d 1065, 1066): “ The question herein raises significant and far-reaching questions with respect to the extent of an attack on a judicially authorized wiretap order. New York courts have not passed directly on the extent to which a court may permit an examination of a wiretap order and supporting affidavit, when the wiretap order is sufficient on its face and the allegations contained in the supporting affidavit establish probable cause. ”
The Court of Appeals has indicated in People v. McDonnell (18 N Y 2d 509) standing presented “ a threshold question ” in determining whether a defendant could challenge eavesdrop *752 evidence. While we do not have “ eavesdrop ” evidence, in the traditional sense, the distinction between it and ‘ ‘ wiretap ’ ’ evidence certainly is analogous under section 813-a of the Code of Criminal Procedure.
In a recent decision by our Court of Appeals, People v. Morhouse (21 N Y 2d 66, 77) in reference to eavesdrop orders, the court said: “ There is * * * no question but that the defendant has standing to object to these bugs and wiretaps. His own business office was bugged and phone calls to which he was a party were tapped. * * * Further, if there were improper eavesdrops, it must be determined whether the People’s evidence * * * was ‘ tainted ’ by such improper eavesdropping. ’ ’ Of particular importance in the case of People v. McDonnell (supra) is the fact that the defendant was not a party to the telephone conversation nor was he a subscriber to the “ tapped ” phone. Defendant was charged with crimes of book-making and conspiracy and as stated by the court (pp. 510-511):
“ It is the very theory of the prosecution itself — that, if the charges were true, the phone was actually being maintained and used for the defendant’s benefit. Accordingly, the defendant had standing to challenge and question the lawfulness of the eavesdropping order which permitted the police to tap the * * * phone and intercept the communications over it. (Cf. Jones v. United States, 362 U. S. 257.) ”
* ‘ It follows that the defendant was entitled to an adjudication on the merits as to whether the eavesdropping order was improperly issued and the evidence secured by the consequent interception illegally obtained.”
It is the defendants’ contention herein that they are entitled to examine not only the most recently issued wiretap order but as importantly, if that order was issued in part based upon facts obtained as a result of earlier telephonic interceptions, the defendants should then be able, to challenge the propriety of the predicate wiretap orders. Defendants’ argument continues that if the predicate wiretap order was improperly issued, any evidence obtained as a result thereof is ‘ * fruit of the poisoned tree ” and must necessarily “ taint ” any subsequently obtained wiretap order. (Nardone v. United States, 308 U. S. 338; 302 U. S. 379.) As has been already delineated by the chronology heretofore set forth, this court has indeed a ‘' tree of substantial measurements with many branches ”.
It is argued by the People that in order for a defendant to have “standing” under the “pre-McDonnell” definition of that term, he must allege either ownership of the phone at *753 either end of the telephonic transmission, or be an actual vocal party to the conversation which was intercepted and which was allegedly one of the basis for the present indictment. To follow such a theory to its natural conclusion would put such a defendant into the same .position as Jones in Jones v. United States (supra) in forcing him, on the motion, to admit either subscription to the instrument being used for illegal purposes, or admit that he was one of the parties to the conversation which is one of the basis of the prosecution. If he admits either, he may well be admitting his part in the conspiracy charged.
This court cannot accept such a strict interpretation considering the pronouncement of law in People v. McDonnell (supra) and analogously in Jones v. United States (supra).
As the Supreme Court said so plainly in Katz v. United States (389 U. S. 347, 351): “ The Fourth Amendment protects people, not places * * * what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.”
Therefore, these defendants would be entitled to examine the predicate wiretap orders to determine whether or not the evidence obtained from the intercepted telephonic communications was obtained in a lawful manner, i.e., whether the wiretap orders were based upon ‘ ‘ probable cause ’ ’. As the courts have stated so often, the Constitution requires “ that the deliberate, impartial judgment of a judicial officer * * * be interposed between the citizen and the police ” (Wong Sun v. United States, 371 U. S. 471, 481-482).
This court finds that it must, in the interests of justice consider the rights of the People to investigate and prosecute for criminal acts committed, and must also consider whether it will permit illegally obtained evidence to be submitted to it in the name of ‘ ‘ probable cause ’ ’ and thus be engraved for all time with the imprimatur of this court without itself being subject to review. (People v. McCall, 17 N Y 2d 152.) As was said: “ If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a Government which is to be administered by men over men, the great difficulty lies in this: You must first enable the government to control the governed; and in the next place, oblige it to control itself.” (James Madison, The Federalist No. 51 [1788].)
If the foregoing were not enough, we have before us a situation where in each of the wiretap orders involved the court finds that at least one of these defendants was either the subscriber or a party to an intercepted conversation and that considering the *754 language of the indictment: ‘' All of the acts and transactions alleged in each of the several counts of this indictment are connected together and form part of a common scheme and plan ’ we are mandated to examine each wiretap order involved.
Following the mandate of the Court of Appeals in People v. Morhouse (21 N Y 2d-66, 77, supra): “ The prosecution’s conduct in obtaining and carrying out these eavesdrop orders, and the orders themselves, are to be tested only against the standards reasonably believed applicable at the time such orders were obtained and this conduct occurred ’ ’ the court has reviewed all the wiretap orders in question, together with the supporting affidavits and testimony given before the court in certain instances and finds that there were sufficient facts set forth before the issuing Judge to permit him to find “ reasonable cause to believe that evidence of a crime might be thus obtained ’ ’. Accordingly, this court finds no present need for a hearing. (People v. McCall, 17 N Y 2d 152, supra-, People v. Alfinito, 16 N Y 2d 181; People v. Solimine, 18 N Y 2d 477; Berger v. New York, 388 U. S. 41; Katz v. United States, 389 U. S. 347, supra; People v. Kaiser, 21 N Y 2d 86.) It is, therefore ordered that as regards the suppression of telephonic communications obtained pursuant to the above-delineated wiretap orders, the defendants’ motions are denied, in all respects. It is further ordered that if defendants’ counsel has not received a copy of the subject wiretap orders discussed herein and their supporting affidavits, the District Attorney is directed to provide counsel with a copy of same, upon written notice being given to the District Attorney by defendants’ counsel.